IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| TAQUILA MONROE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 5:21-CV-89 (MTT) |
| | ) |
| FORT VALLEY STATE UNIVERSITY, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## ORDER

Defendants Fort Valley State University ("FVSU")[1] and the Board of Regents of the University System of Georgia ("the Board") move to dismiss Plaintiff Taquila Monroe's claims for retaliation brought under the False Claims Act ("FCA") and the Georgia Whistleblower Protection Act ("GWA"). For the reasons discussed below, the defendants' motion (Doc. 10) is **GRANTED**.

### I. BACKGROUND

FVSU provides Head Start and Early Head Start ("HS/EHS") services with the assistance of annual grants from the United States Department of Health and Human

---

[1] FVSU and other "member institutions" are not "separate or distinct legal entit[ies] from the [Board] and, therefore, cannot sue or be sued in [their] own capacity." *Bd. of Regents of the Univ. Sys. of Ga. v. Doe*, 278 Ga. App. 878, 630 S.E.2d 85, 87 (2006) (holding that Georgia Tech could not sue or be sued in its own capacity); *see also McCafferty v. Med. Coll. of Ga.*, 249 Ga. 62, 64-65, 287 S.E.2d 171, 173 (1982) (holding that the Medical College of Georgia could not sue or be sued in its own capacity), *overruled on other grounds by Self v. City of Atlanta*, 259 Ga. 78, 377 S.E.2d 674 (1989); *Ranson-Dillard v. Tech. Coll. Sys. of Ga.*, 2021 WL 2003557, at *2 (M.D. Ga. May 19, 2021) (dismissing Southern Regional Technical College as a party); *Regalado v. Ga. State Univ.*, 2020 WL 5815924, at *3 (N.D. Ga. Sept. 10, 2020) (substituting the Board of Regents for Georgia State University as a defendant); *Little v. Fort Valley State Univ.*, 2011 WL 3957267, at *1 (M.D. Ga. Sept. 7, 2011) (finding that FVSU was an improper defendant). Monroe concedes this. Accordingly, the Board is the only proper defendant, and FVSU is **DISMISSED**.

Services. Doc. 5 ¶¶ 9-10. FVSU's HS/EHS program is also "partly supported by matching funds from the state of Georgia." *Id.* ¶ 1. While employed at FVSU, Monroe served as the Program Director for FVSU's HS/EHS department and reported to the Executive Director of FVSU's HS/EHS department. *Id.* ¶¶ 8-13, 15.

Monroe alleges there were "pervasive, systematic problems" in FVSU's HS/EHS program, to which Monroe proposed solutions that were "consistently rebuffed" by the Executive Director. *Id.* ¶ 15. On January 15, 2021, while she was "in the process of installing a more effective monitoring protocol," Monroe was fired. *Id.* ¶¶ 34-35. Monroe alleges she was fired because she raised questions about FVSU's HS/EHS operations and thus, she brings these claims for retaliation under the FCA and GWA.

## II. STANDARD

The Federal Rules of Civil Procedure require that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To avoid dismissal pursuant to Rule12(b)(6), a complaint must contain sufficient factual matter to "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when "the court [can] draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Factual allegations that are merely consistent with a defendant's liability fall short of being facially plausible." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012) (internal quotation marks and citations omitted).

At the motion to dismiss stage, "all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the

plaintiff." *FindWhat Inv'r Grp. v. FindWhat.com.*, 658 F.3d 1282, 1296 (11th Cir. 2011) (internal quotation marks and citations omitted). But "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Wiersum v. U.S. Bank, N.A.*, 785 F.3d 483, 485 (11th Cir. 2015) (internal quotation marks and citation omitted). The complaint must "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (internal quotation marks and citation omitted). Where there are dispositive issues of law, a court may dismiss a claim regardless of the alleged facts. *Patel v. Specialized Loan Servicing, LLC*, 904 F.3d 1314, 1321 (11th Cir. 2018) (citations omitted).

## III. DISCUSSION

### A. False Claims Act Retaliation Claim

The parties' briefs, particularly the Board's, confuse the issues raised by the Board's motion to dismiss Monroe's FCA retaliation claim. In effect, the Board raises three issues: (1) whether, as a matter of statutory interpretation, only "persons" can be sued for retaliation under the FCA and, if so, whether the Board is a "person"; (2) if liability for retaliation under the FCA is not limited to "persons," whether the Board is entitled to Eleventh Amendment immunity; and (3) whether Monroe's complaint states a claim for retaliation under the FCA. The Board conflates the first two issues and Monroe all but ignores the first. That is perhaps understandable—the gap between issues (1) and (2) is narrow. But it is a gap that must be respected, and the Court addresses the first two issues separately. It is not necessary to address the third.

*1. The FCA's Retaliation Provision Does Not Limit Liability to "Persons"*

The Board argues FCA retaliation claims can only be brought against "persons," and because states are not "persons," Monroe's claim must be dismissed. Doc. 10 at 8-11. The Board heavily relies on *Vt. Agency of Nat. Res. v. United States ex rel. Stevens*, a Supreme Court case that addressed whether a *qui tam* relator's allegation that the Vermont Agency of Natural Resources submitted false claims to the Environmental Protection Agency was cognizable under § 3729(a) of the FCA. 529 U.S. 765, 770 (2000). Section 3729(a) imposes liability against "[a]ny person" [who] knowingly presents ... to ... the ... Government ... a false or fraudulent claim for payment." Vermont contended first, that as a matter of statutory interpretation, a "State (or state agency) is not a 'person' subject to *qui tam* liability under the FCA," and second, even if it was a "person" subject to liability, it had Eleventh Amendment immunity. *Stevens*, 529 U.S. at 778.

While recognizing that immunity issues generally are resolved first, the Supreme Court found it logical to decide whether a statute permits a claim before deciding whether the Eleventh Amendment forbids the claim.[2] *Id.* at 779-80. Accordingly, the Court considered whether Congress, when it created a cause of action against "persons" who filed false claims, intended to allow such claims to be brought against states. *Id.* After examining the text of § 3729(a) and the historical context of the FCA, the Court held that states (and state agencies) are not "persons" subject to liability under § 3729(a). *Id.* at 780-88. As a logical extension of *Stevens*, the Board argues

---

[2] The question of which issue to address first had split the Circuits. *Stevens*, 529 U.S. at 778 (internal citations omitted).

that if states are not "persons" who can be sued under the *qui tam* provision of the FCA, then states cannot be sued for retaliation under the FCA. Doc. 10 at 8-11.

The few courts addressing whether states are subject to FCA retaliation claims have not addressed as a matter of statutory interpretation, as *Stevens* did for *qui tam* claims, whether FCA retaliation claims can only be brought against persons. *See, e.g., Klaassen v. Univ. of Kan. Sch. of Med.*, 84 F. Supp. 3d 1228, 1239 (D. Kan. 2015); *Bell v. Dean*, 2010 WL 1856086, at *2-4 (M.D. Ala. May 4, 2010); *Weihua Huang v. Rector and Visitors of Univ. of Va.*, 2011 WL 6329755, at *6-8 (W.D. Va. Dec. 19, 2011). Instead, they jump to the question of whether Congress abrogated the states' Eleventh Amendment immunity from FCA retaliation claims. *Id.* In the Court's view, the statutory interpretation analysis requires a nod—but a nod is all it takes.

The Supreme Court's holding that liability for submitting false claims is limited to "persons" was based entirely on the fact that Congress put "persons" in § 3729(a). *Stevens*, 529 U.S. at 778-88. But Congress did not put "persons" in § 3730(h), and nothing in § 3730(h) limits who can be sued for retaliation. It may be, as the Board argues, that it would be incongruous to limit one type of FCA claim to persons and not similarly limit another type of FCA claim. Monroe, on the other hand, advances compelling reasons why Congress might have wanted to expand liability for retaliatory actions. But resolving that policy debate is neither necessary nor appropriate. "Person" makes no appearance in § 3730(h), and the Court sees no principled way to graft "person" on the statute with no hint that Congress wanted it there.

Accordingly, the Court concludes that retaliation liability under the FCA is not limited to persons and turns to the question of whether Congress abrogated the states' Eleventh Amendment immunity when it enacted § 3730(h).

*2. The FCA's Retaliation Provision Does Not Abrogate Eleventh Amendment Immunity*

The Eleventh Amendment bars federal courts from entertaining suits against states. U.S. Const. Amend. XI. Eleventh Amendment immunity may only be abrogated if (1) congress "unequivocally expressed its intent to abrogate" the states' sovereign immunity in the statute at issue and (2) "congress acted pursuant to a valid grant of constitutional authority." *Ass'n for Disabled Americans, Inc. v. Fla. Int'l Univ.*, 405 F.3d 954, 956-57 (11th Cir. 2005) (citing *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 73 (2000)). As to the first step, the Court examines the plain text of the statute at issue to derive Congressional intent. *See, e.g., Kimel*, 528 U.S. at 73-74 (reading the plain language of the ADEA to find evidence of Congress's intent to allow suits for money damages against the States); *Seminole Tribe of Fla. v. Florida.*, 517 U.S. 44, 56 (1996) (reading the plain text of the Indian Gaming Regulatory Act to conclude that Congress intended to abrogate sovereign immunity). Here, the original version of § 3730(h) provided relief for:

> Any employee who is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment *by his or her employer* because of lawful acts done by the employee on behalf of the employee or others in furtherance of an action under this section, including investigation for, initiation of, testimony for, or assistance in an action filed or to be filed under this section, shall be entitled to all relief necessary to make the employee whole. Such relief shall include reinstatement with the same seniority status such employee would have had but for the discrimination, 2 times the amount of back pay, interest on the back pay, and compensation for

any special damages sustained as a result of the discrimination, including litigation costs and reasonable attorneys' fees. An employee may bring an action in the appropriate district court of the United States for the relief provided in the subsection.

Pub. L. No. 99-562, 100 Stat 3153 (1986) (emphasis added). Section 3730(h) has been amended several times—most relevant here in 2009 when Congress expanded the scope of persons liable for retaliation. Currently, § 3730(h) provides:

Any employee, contractor, or agent shall be entitled to all relief necessary to make that employee, contractor, or agent whole, if that employee, contractor, or agent is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee, contractor, agent or associated others in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter.

31 U.S.C. § 3730(h).

The Board's abrogation argument is perfunctory, and that is probably all it needs to be. There is no unmistakably clear intent in § 3730(h) to abrogate Eleventh Amendment immunity.

Recognizing that she is hobbled by the absence of even a hint in § 3730(h) that Congress abrogated state sovereign immunity, Monroe turns *Stevens*' person analysis to her advantage. When Congress added an FCA retaliation cause of action against employers in 1986, Monroe argues Congress knew that a *qui tam* action could only be asserted against a "person" and it knew that "person" did not include states. Doc. 13 at 4-5. This, Monroe maintains, requires the Court to apply a more rigorous analysis beyond the mere absence of "magic words, such as an explicit reference to states being liable," to determine whether Congress had the "specific intent" to abrogate the immunity of the states. *Id.* at 7-8.

Monroe then lays out her legislative history argument.[3] *Id.* at 4-5. When Congress created a FCA retaliation cause of action, "if Congress meant the reach of the whistleblower's section to be identical to the reach of the substantive enforcement sections, it could have done so seamlessly by substituting persons for 'employers.'" *Id.* at 4. Even after *Stevens*, rather than limiting the reach of retaliation claims to persons, Congress expanded that reach by deleting the limitation that retaliation claims could be brought only against employers, "making the definition of parties exposed to liability open-ended." *Id.* at 5. Finally, Congress, "could have, but did not, overturn *Stevens* by writing 'states' into the text of Section 3729." *Id.* at 4-5. This sequence of events, Monroe concludes, establishes that Congress intended to abrogate Eleventh Amendment immunity for retaliation claims against the states. *Id.* at 8.

Monroe buttresses her legislative history arguments with policy arguments. *Id.* at 5-7. "There are multiple reasons Congress might expose state actors to whistleblowers suits while insulating them from *qui tam* litigation." *Id.* at 5. First, she argues that "the damages available in the retaliation clause remain less comprehensive and financially burdensome to the state treasury"; therefore, Congress drew a line "between compensatory relief for workplace retaliation and the lure of a multimillion-dollar judgment that could drain a state entity's resources." *Id.* at 5-6. Second, she asserts that "[i]f state employee whistleblowers could not sue for retaliation, states would have a free pass to punish them for exposing wrongdoing." *Id.* at 6-7.

---

[3] Monroe acknowledges in a footnote that legislative history is "generally not relevant to judicial analysis of whether Congress means a statute to abrogate sovereign immunity." Doc. 13 at 4 n.3 (citing *Dellmuth v. Muth*, 491 U.S. 223, 230 (1989)).

All fine arguments, but they are knocked down by the requirement that abrogating Eleventh Amendment immunity requires evidence of unmistakably clear intent. *Kimel*, 528 U.S. at 78. For example, in *Kimel*, the Supreme Court examined § 216(b) of the ADEA, which authorized actions for backpay "against any employer (including a public agency) in any Federal or State court of competent jurisdiction." *Id.* at 73-74 (quoting 29 U.S.C. § 626(b)). The ADEA defines public agency as "'the government of a State or political subdivision thereof,' and 'any agency of … a State, or a political subdivision of the State.'" *Id.* at 74 (quoting 29 U.S.C. § 203(x)). This "plain language," the Court held, "clearly demonstrates Congress'[s] intent to subject the States to suit for money damages." *Id.*

Simply put, § 3730(h) is devoid of any intent, much less unmistakably clear intent, to abrogate Eleventh Amendment immunity. And while Monroe's legislative history argument might carry weight in other contexts, it is dead weight here because reliance on legislative history in the absence of unmistakably clear intent is "futile." *Dellmuth*, 491 U.S. at 230. Furthermore, Monroe's policy argument that barring retaliation suits against states grants a "free pass to punish [employees] for exposing wrongdoing" is generally compelling, but it simply is not relevant to sovereign immunity abrogation analysis.[4] Doc. 13 at 6-7. In sum, the plain text of § 3730(h) does not provide "unmistakably clear" evidence of Congress's intent to allow retaliation suits

---

[4] The few courts that addressed whether § 3730(h) abrogates Eleventh Amendment immunity have all held that it does not. *See, e.g., Klaassen*, 84 F. Supp. 3d at 1242-45 (finding that the language of § 3730(h) ambiguous as to whether a state can be sued for retaliation under the FCA); *Bell*, 2010 WL 1856086, at *2-4 (finding that the 2009 amendment which removed the word "employer" from § 3730(h) did not equate to unequivocable intent to abrogate the immunity of the states); *Weihua Huang*, 2011 WL 6329755, at *6-8 (same).

against the Board.  Accordingly, Eleventh Amendment immunity has not been abrogated.

*3. Eleventh Amendment Immunity Precludes Monroe's FCA Retaliation Claim Against the Board*

Monroe argues that the Board has not established that it is an "arm of the state" entitled to Eleventh Amendment immunity.[5]  Doc. 13 at 8-13.  "Under the traditional Eleventh Amendment paradigm, states are extended immunity, counties and similar municipal corporations are not, and entities that share characteristics of both require a case-by-case analysis." *United States ex rel. Lesinski v. S. Fla. Water Mgmt. Dist.*, 739 F.3d 598, 601 (11th Cir. 2014) (citing *Mt. Healthy Cty. Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977)).  In the Eleventh Circuit, this case-by-case analysis is conducted by applying the factors set out in *Manders v. Lee*, 338 F.3d 1304, 1308-09 (11th Cir. 2003).  However, the application of *Manders* is only required when the agency in question is performing discrete functions on behalf of both the state *and* a county or municipality, or at least performing a function as an "arm of the state" that is more analogous to a municipal entity. *Compare Lesinski*, 739 F.3d at 602-05 (*Manders* analysis appropriate to determine whether one of Florida's five state-controlled water districts is an "arm of the state" for the specific function of water management because each district served a prescribed geographic area and had the power to levy taxes to

---

[5] Monroe incorrectly cites *United States ex rel. Lesinski v. S. Fla. Water Mgmt. Dist.*, 739 F.3d 598, 602 (11th Cir. 2014) for the proposition "that in FCA cases, entities asserting sovereign immunity under the Eleventh Amendment cannot just rely on their status as state agencies." Doc. 13 at 8. *Lesinski*, which addressed whether a *qui tam* action could be brought against a state created agency, was not an Eleventh Amendment case.  739 F.3d at 602.  Rather, it borrowed "Eleventh Amendment arm of the state analysis to determine whether a state entity is a 'person' subject to FCA liability." *Id.*  Still, *Lesinski* is instructive because the Eleventh Circuit noted "that the [*Manders*] analysis for the two questions is identical." *Id.* at 606 n.9.  But *Lesinski* doesn't help Monroe.

support regional water management) *with Nicholl v. Bd. of Regents of Univ. Sys. of Ga.*, 706 F. App'x 493, 495 (11th Cir. 2017) (finding the Board of Regents of the University system of Georgia is an "arm of the state" without resorting to *Manders* analysis).

For example, in *Manders*, the Eleventh Circuit recognized that Eleventh Amendment immunity for Georgia sheriffs can be a close call because, under Georgia law, a sheriff is constitutionally created and accountable only to the State, yet exists to serve a particular county and derives significant funding from that county. *See* 338 F.3d at 1310-12; *see also Lake v. Skelton*, 871 F.3d 1340, 1344 (11th Cir. 2017) ("Until our decision in *Manders* ... this Court always treated a claim against a Georgia county sheriff for operating a county jail as a claim against the county."). Outside of that context, case-by-case analysis is rare because state entities created by the state legislature generally exist to serve only the state. *See Spurrier v. Bd. of Tr. of the Univ. of Ala.*, 2016 WL 4137971, at *4 (N.D. Ala. Aug. 4, 2016) (holding it was "without question" that the Board of Trustees of the University of Alabama was an "arm of the state" without applying *Manders*); *Mack v. Bd. of Regents of Univ. Sys. of Ga.*, 2019 WL 7000035, at *4 (S.D. Ga. Dec. 19, 2019) (applying *Manders* only after finding the Board of Regents of the University System of Georgia was not Plaintiff's employer but rather Plaintiff was employed by a subsidiary entity controlled and owned by the Board). In other words, the entity claiming Eleventh Amendment immunity must be performing discrete functions on behalf of both the state and another entity to require a rigorous function-specific analysis. *See Williams v. Dist. Bd. of Tr. of Edison Cmty. Coll., Fla.*, 421 F.3d 1190, 1192-95 (11th Cir. 2005) (applying *Manders* to determine whether a Florida community college is an "arm of the state"); *Haven v. Bd. of Tr. of Three Rivers*

*Reg'l Libr. Sys.*, 625 F. App'x 929, 934 (11th Cir. 2015) (vacating district court's holding that a regional library was "uncontestably an arm of the state" and remanding with instructions that the court apply *Manders* to determine whether the library was entitled to Eleventh Amendment immunity).

In short, when a state-created entity only serves the state, a *Manders* analysis is a pointless exercise. That is the case here. Monroe does not suggest that the function at issue was performed for or on behalf of some other entity. She just argues that the Board hasn't proved the function was performed for or on behalf of the state. That is not how it works. In effect, Monroe asks the Court to examine the function to determine whether it is a function states typically perform. Neither *Manders* nor any other case has suggested that Eleventh Amendment immunity turns on such a determination. If that were so, nearly every Eleventh Amendment immunity defense would require courts to pass judgment on whether particular activities of state agencies should enjoy the protection of the Eleventh Amendment. But the question is whether the state agency is performing a function as or on behalf of some non-state governmental entity. That is why *Manders* analysis is frequently necessary when sheriffs are sued, but almost never necessary when the defendant is a state agency that does not also act as a non-state governmental entity.

But Monroe raises *Manders* and the Court will address it, if for no other reason than to demonstrate why it is a pointless exercise. Under *Manders*, whether an agency is an "arm of the state" is a "function-specific" inquiry determined by examining four factors: "(1) how state law defines the entity; (2) what degree of control the State maintains over the entity; (3) where the entity derives its funds; and (4) who is

responsible for judgments against the entity." 338 F.3d at 1308-09. Here, each factor supports a finding that the Board is an "arm of the state" and thus entitled to Eleventh Amendment immunity.

**Definition of the Board Under Georgia Law.** The Georgia Constitution and state legislature vested the Board with the power to govern, control, and manage the university system and to establish schools of learning to benefit the State. Ga. Const. art. VIII, § 4, ¶ I; O.C.G.A. § 20-3-51; O.C.G.A. § 20-3-31(3). Thus, the Board argues it "performs the essential governmental function of providing education to Georgia citizens" and that ends the inquiry. Doc. 15 at 6. On the other hand, Monroe argues the Board must show it was acting under the state's authority when the Board administered the federally funded HS/EHS program. Doc. 13 at 10. But Monroe is missing the point. The Board does not derive its power to educate Georgia citizens from the federal government, nor does that power come from a county or municipality; rather, this power is exclusively derived from a constitutional mandate and the General Assembly. *See* Ga. Const. art. VIII, § 4, ¶ I; O.C.G.A. § 20-3-51; O.C.G.A. § 20-3-31(3); *see also Abusaid v. Hillsborough Cnty. Bd. of Cnty. Comm'rs*, 405 F.3d 1298, 1309 (11th Cir. 2005) (observing that Florida sheriffs derive power from both the state and from counties, and they do not act as an "arm of the state" when enforcing county ordinances).

Monroe's reliance on *Lesinski* is also misplaced. *See* Doc. 13 at 10-11. In that case, a *Manders* analysis was triggered because even though Florida law defined the water district as an "arm of the state" as it did with the state's four other water districts, each individual water district shared characteristics with local municipalities because

they served a specific geographic subdivision of the state and collected taxes from the same. See *Lesinski*, 739 F.3d at 603-04. Here, the Board unquestionably serves the entire State of Georgia, and the fact that it receives federal funding for some of the programs it administers is simply irrelevant in determining the Board's status as a state actor.[6] This factor clearly weighs in favor of immunity.

**The State's Degree of Control Over the Board**. Second, the degree of control exercised by the state of Georgia weighs unquestionably in favor of immunity. Specifically, the Board is composed of five members from the State at large, appointed by the Governor and confirmed by the Senate, and additional members from each congressional district. Ga. Const. art. VIII, § 4, ¶ I; O.C.G.A. § 20-3-21. The Board is also subject to strict oversight by the Governor and required to submit "annual reports of its transactions, together with such information as necessary to show the condition of the university system[.]" O.C.G.A. § 20-3-35. Nonetheless, Monroe argues the Board must "identify that there were meaningful state-prescribed restrictions governing [the Board's] administration of the HS/EHS grant." Doc. 13 at 11. In support of this proposition, Monroe directs the Court to two cases involving agencies that had some state oversight but were also subject to county regulation and control. Doc. 13 at 11 (citing *Freyre v. Chronister*, 910 F.3d 1371, 1383 (11th Cir. 2018)); *Lightfoot v. Henry Cnty. Sch. Dist.*, 771 F.3d 764, 772-75 (11th Cir. 2014)).

In *Freyre*, the Florida county at issue elected the Sheriff and was free to abolish the office altogether. 910 F.3d at 1383. In *Lightfoot*, county school board members

---

[6] However, federal funding would be relevant in situations where Congress has unambiguously conditioned the receipt of federal funds on a waiver of immunity because a state cannot continue to accept federal funds without knowingly waiving its immunity. *Garrett v. Univ. of Ala. at Birmingham Bd. of Tr.*, 344 F.3d 1288, 1293 (11th Cir. 2003). That is not the case here.

-14-

were locally elected county residents and thus largely under local control. 771 F.3d at 772. Here, neither of these cases is relevant because the Board is accountable to no other entity other than the General Assembly and the Governor of Georgia. O.C.G.A. § 20-3-35.

Thus, the Board is not required to identify any "meaningful state prescribed restrictions" because the Board is only subject to the control of the State.

**Where the Board Derives Its Funding**. The gist of Monroe's argument as to the third factor appears to be that because the specific function at issue was federally funded, this factor weighs against a finding of immunity. Doc. 13 at 12. But federal funding has nothing to do with an Eleventh Amendment "arm of the state" analysis. As previously discussed, states are extended immunity, counties and similar municipal corporations are not. *Mt. Healthy Cty Sch. Dist. Bd. of Educ.*, 429 U.S. at 280. Federal sovereign immunity is another matter entirely. *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994). But more importantly, the entity whose funding is relevant is the Board's, and the Board's funding is controlled exclusively by the state. Ga. Const. art. 8, § 4, ¶ 1(c); O.C.G.A. § 20-3-35. Therefore, the third *Manders* factor clearly favors the Board.

**Liability and Risk of Judgment**. Monroe correctly contends the fourth factor is generally considered the most important in making Eleventh Amendment immunity determinations. *See Hess v. Port Auth. Trans-Hudson Corp.*, 513 U.S. 30, 48 (1994). Nevertheless, Monroe is incorrect in her assertion that discovery is required to resolve it. *See* Doc. 13 at 12.

While the Board may receive funding from other sources such as the federally funded HS/EHS grant, Monroe certainly does not contend the federal government would

be financially liable for any judgment levied against the Board. *See generally* Doc. 13 at 12-13. All that is required of the Board is the establishment of the state's *potential* responsibility for a monetary judgment, which it has done. Here, the Board is not fiscally autonomous; it is governed and funded by the state of Georgia. Ga. Const. art. 8, § 4, ¶ 1(b); O.C.G.A. § 20-3-35. Because the Board is governed by the state of Georgia, any monetary judgment levied against the Board would be paid from the public treasury. *Cf. Lightfoot*, 771 F.3d at 777-78 (finding that the fourth *Manders* factor disfavored immunity because of the school board's ability to raise its funding). Simply put, if the Board didn't pay, who would? Accordingly, the fourth factor favors immunity.

As illustrated, because the Board only serves the State, all four *Manders* factors clearly support a finding of immunity. The Board is entitled to Eleventh Amendment immunity as to Monroe's FCA retaliation claim.

### B. Eleventh Amendment Immunity Precludes Monroe's GWA Claim

It is well settled that any GWA claim brought against the state is barred by Eleventh Amendment immunity, and Monroe does not contend otherwise. *See* Doc. 13 at 9-10. Monroe's only argument is that the Board is not an "arm of the state" which, as discussed, fails. Doc. 13 at 10. Accordingly, the Board is entitled to Eleventh Amendment as to Monroe's GWA claim. *Brandenburg v. Bd. of Regents of Univ. Sys. of Ga.*, 518 F. App'x 628, 631 (11th Cir. 2013) ("The district court also did not err in dismissing the Georgia Whistleblower Act claim ... based on Eleventh Amendment immunity.").

## IV. CONCLUSION

For the reasons discussed above, the Board's motion to dismiss (Doc. 10) is **GRANTED**, and Monroe's claims are **DISMISSED** without prejudice.

**SO ORDERED**, this 22nd day of November, 2021.

S/ Marc T. Treadwell<br>
MARC T. TREADWELL, CHIEF JUDGE<br>
UNITED STATES DISTRICT COURT